McKinney, J.
delivered the opinion of the court.
This action, in which are joined counts in trover and case, was brought by the defendant in error, in the Circuit Court of Obion county, to recover the value of a slave delivered into the possession of the plaintiff in error under an agreement, in writing, sealed by the parties, of which the following is a copy, viz:
“An article of agreement between Gideon Allen of the first part, and William Price of the other part; said Allen, on his part, agrees to give the said Price the use of a negro boy, Elleck, from this time until Christmas; and the said Price, on his part, delivers to the said Allen, one mule, of the value of sixty dollars, as compensation for the use of' said negro. The said Price is to-find two suits of Rummer clothing for said boy; the right of said mule to remain in said Price until the work is done and the time expires. Given under our hands and seals this the 11th day of April, 1846.
“Gideon Allen, [Seal.]
“William E. Price.” [Seal.]
“Test. — E. Y. Shuck, . .
Thomas M. Price.”
*710 The proof shows, that said slave was delivered to the plaintiff in error immediately after the execution of the foregoing written agreement. It farther appears, that the plaintiff in error retained the slave in his own possession and service until after his tobacco crop was gathered; and then hired said slave, till Christmas, to one Edwards, who took him near to Mills’ Point, on the Mississippi river, about twelve miles distant from the residence of the plaintiff in error; and while at work there in the service of Edwards, the slave became sick and died. On the trial, evidence was introduced by the plaintiff, of a verbal agreement between him and Price, made on'the day previous to the execution of the written contract and the delivery of the slave, that the slave was to be employed by Price in working on his farm, in Obion county. The admissions of Price to that effect, and that he was forbidden to hire the slave to another were also given in “evidence by the plaintiff.
During the argument of the cause before the jury, the defendant’s counsel moved the court to withdraw from the jury all the evidence in reference to the hiring of said slave, except the foregoing written agreement; but the court refused to do so. The Circuit judge instructed the jury, in substance, that if the slave were hired to the defendant to work on his farm, in Obion county, and he afterwards hired said slave to Edwards, to cut wood on the Mississippi river, this would be a conversion of the slave by the defendant. And, further, that if the hiring were general, yet the defendant would not have a right to hire the slave to Edwards, for the entire time for which the defendant had hired him, so as to lose all control over him.
*711 The jury rendered a verdict for five hundred and ninety-four dollars' damages, which the court refused to set aside, and the defendant appealed in error to this court. The errors relied upon are. first, the refusal of the court to«exclude the parol evidence from the jury; and second, the instructions to the jury, that the hiring of the slave, by the defendant, to Edwards, was a conversion.
1. We are of opinion that the court erred in refusing to exclude the parol evidence which had been permitted to go to, the jury. The written instrument above set forth, upon its face, imports a legal obligation, containing the terms of the contract between the parties, intelligible in itself, complete in its terms, and without any uncertainty as to the object or extent of the agreement; it is therefore presumed, to contain the whole agreement and undertaking of the respective parties, and that it was' designed to be the evidence of their final intentions; and all oral testimony of previous conversation between the parties, or of declarations at the time when it was executed, or afterwards, tending to substitute a different contract, was inadmissible, and ought to have been rejected. In the application of this principle, it is unimportant at what time during the progress of the trial, the objection may be taken, or as to the mode of taking it. It may be, that, in particular cases, the force of the objection cannot be made manifest until opportunity, is afforded the party to be prejudiced, of introducing his evidence. And even though no objection be made when the illegal evidence is admitted, yet it is competent to the party to be affected thereby, at any time before the retirement of the jury from the box, to call upon the court to exclude it from the consider *712 ation of the jury; and if the objection has not been previously waived by some affirmative act of the party, it will be error in the court to refuse to do so.
2. In reference to the question, whether the hirer of a slave, in a case of general hiring, is at liberty to transfer the possession and control of the slave to another by sub-hiring, without the knowledge and assent of the owner, no decision is called for upon the proper construction of the written contract between the parties in this case. It may not, however, be improper to remark, that we are not aware of any authoritative adjudication, expressly upon the point, in this State; and when properly presented it will be a question worthy of grave consideration, whether, in respect to slave property, such right on the part of the general hirer, can be maintained either upon principle or authority.
We think the proper meaning and construction of the written contract between the parties in this case were mistaken by his Honor, the Circuit Judge. It does not import, in its terms, a general hiring, as seems to have been assumed; but a delivery of the slave to the plaintiff in error, for a limited period to the personal use of the latter. The language of the contract is not that the owner, in general terms, hires the slave to Price, for a certain time, the effect of which would have been to vest him with all the rights of a general hirer, whatever they may be; but on the contrary to give the use of the slave to Price till Christmas; and for such use Price stipulates to deliver to the owner a mule worth sixty dollars. This language clearly imports a personal obligation and trust, on the part of Price, that he should retain the possession, control, and use of the labor of the slave during the entire period limited in the agree *713 ment. This is still more apparent from the stipulation on the part of Price, that he was to retain the legal title to the mule, to the end that he might be made sure of the services of the slave for the period of time agreed upon; or, if otherwise, that he should not be liable for the hire. This stipulation clearly indicates that it was not understood or intended that Price should stand upon the footing, or be held to the responsibilities of a general hirer; who is liable for the hire,, although he may not enjoy the services stipulated for, unless otherwise agreed upon by the parties. Upon this construction of the written contract, it results, that Price had no authority to hire the slave to Edwards; and that in doing so he Was guilty of a conversion of the slave, and of course liable in damages for his reasonable value with interest thereon, as increased damages, from the time of the conversion, if deemed proper by the jury, under all the circumstances of the case.
The judgment must be reversed, and the cause remanded for a new trial.